### BUCZYNSKI *v.* BUCZYNSKI.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE.

Extreme cruelty on part of plaintiff husband *held,* shown by testimony that he had a mean temper, called defendant and cross-plaintiff a snake and other mean names, spit in her face, wouldn't give her anything to eat, threatened to hit her with a hammer and told her he wanted a divorce.

2. SAME—PROPERTY SETTLEMENT—EQUITY.

Decree awarding plaintiff husband only $900 and imposing a lien therefor on combination store and residence property which the parties were purchasing under an executory land contract, subject to the vendor's rights, was not an inequitable settlement at termination of marriage lasting 6 years, where the defendant had had some interest in the premises at the time of the marriage, the property was occupied by the parties and a business conducted thereon and plaintiff had already deeded a new home he had built to his children by a former marriage.

Appeal from Livingston; Lyons (Willis L.), J. Submitted January 10, 1952. (Docket No. 34, Calendar No. 45,280.) Decided March 6, 1952.

Bill by Adam Buczynski against Mary Buczynski for divorce on the ground of extreme and repeated cruelty. Cross bill by defendant against plaintiff for divorce on the ground of extreme and repeated cruelty. Decree for defendant on cross bill. Plaintiff appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur, Divorce and Separation § 48 *et seq.*
[2] 17 Am Jur, Divorce and Separation § 445.

*E. Reed Fletcher,* for plaintiff.

*VanWinkle & VanWinkle,* for defendant.

BOYLES, J. In July, 1950, the defendant was granted a decree of divorce on her cross bill. At that time plaintiff was 71 years old and the defendant 59. They were married in July, 1943, and each had been married before. At the hearing in open court before Judge Lyons, Adam Buczynski, plaintiff-cross-defendant, appeared in person and by attorney but did not offer any proof in opposition to the granting of a divorce to the cross-plaintiff. The only contest was over property matters.

The court decreed that the defendant-cross-plaintiff should be the sole owner of certain household goods and of the purchasers' interest in a certain executory land contract hereinafter referred to. The court decreed that she must pay Adam $900 at the rate of $30 per month, apparently for his interest in the property covered by said contract, said payments to be a lien upon her interest therein. The decree further provided that it should be in full of all her rights as to dower, alimony, et cetera, and that each should have no further interest in any life insurance of the other party. These provisions are not controverted on this appeal.

Adam Buczynski, the cross-defendant, appeals and raises 2 questions for our consideration.

1. That the proofs were not sufficient to establish cross-plaintiff's claim of extreme and repeated cruelty. As to that, she testified that he had a cruel and mean temper, that he spit in her face, called her mean and nasty names—a snake and other mean names, chased her out and wouldn't give her anything to eat, threatened to hit her with a hammer, told her he wanted a divorce. Her testimony was

not disputed and under the circumstances ·was. sufficient to establish grounds for divorce.

2. They disagree over property matters and this appeal mainly concerns the provisions in the decree for property rights in a combination house and store building in Hamtramck covered in said land contract, in which Mary was living at the time of their marriage. At that time Mary held this property on said land contract. The premises were partly paid for, in bad shape, and after they had entered into a new contract with the vendors to purchase the premises for $3,500 Adam claims to have spent about $3,000 in making repairs. There was some testimony that the property was worth about $10,000, and that at the time of trial the contract had been paid down to $1,500. For about 5 years after their marriage the parties lived in these premises and conducted a store there. In 1948 they closed the store, sold the fixtures, leased the building and moved to Brighton where Adam built a house worth $6,000 or $8,000 in which they lived until their separation in 1949.

There is a variance in the testimony as to the extent of Mary's interest in the Hamtramck property at the time of the marriage. It is apparent that she did have an interest therein and continued to make payments to the owners, although there is a dispute as to whether these payments came from their revenue in running the store on the property. The trial court concluded that it would be reasonable to leave the ownership of the interest in the Hamtramck property to Mary. Under the decree this would seem to be subject to any further payments to the vendors on the contract. To compensate, the court determined that she should account to Adam to the extent of $900 for his interest therein. So far as this record shows, his lien under the decree, to secure said payments, would be subject

to the vendors' rights in the executory land contract. Admittedly, Adam had already deeded and turned over his other real estate and assets to his own children and they have title to the new home he built in Brighton. We can find no inequities in the property settlement decreed by the court, and the same is affirmed. The decree is also otherwise affirmed *in toto,* with costs to appellee.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, BUSH-NELL, SHARPE, and REID, JJ., concurred.